UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SEYEDVAHID HOSSEINI**, *et. al*.<br><br>　　Plaintiffs,<br><br>　　v.<br><br>**ANTONY J. BLINKEN, in his official capacity,**<br>**Secretary, U.S. Department of State,** *et al.*,<br><br>　　Defendants. | Case No. 23-cv-700 (APM) |

## MEMORANDUM OPINION

### I.

Plaintiffs are Iranian nationals seeking to compel Defendants Secretary of State Antony Blinken and Julie Eadeh, the U.S. Consul General of the U.S. Embassy in Istanbul, Turkey, to adjudicate their J-1 research scholar visa applications, which have now been pending for nearly two years. Plaintiffs claim that the length of time that they have waited constitutes agency action unreasonably delayed in violation of the Administrative Procedure Act ("APA"). 5 U.S.C. § 706(1). Defendants move to dismiss the case for, among other grounds, failure to state a claim. Defendants' motion is granted on that basis.

### II.

#### A.

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, authorizes the issuance of nonimmigrant visas for noncitizens intending to enter the United States temporarily. *See* 8 U.S.C. § 1101(a)(15)(F)(i). Among them are J-1 "exchange visitor" visas for those seeking to teach or study as part of an approved program. *Id.* Upon acceptance to an approved program,

the applicant must complete a DS-160, online nonimmigrant visa applicant form.  22 C.F.R. § 41.103.  Spouses can accompany the J-1 visa holder by applying for a derivative "F-2" or "J-2" visa.  *See* §§ 1101(a)(15)(F)(ii), (J).  Typically, applicants must appear for an in-person interview with a consular officer to evaluate their eligibility.  *See id*. § 1202(h).  The officer must either "issue" or "refuse" the visa.  *See* 22 C.F.R. § 41.121(a).

Following the September 11, 2001 attacks, Congress enacted the Enhanced Border Security and Visa Entry Reform Act of 2002.  Among other things, the Act imposed new restrictions on the issuance of visas and more stringent procedures for monitoring the entry and exit of foreign students and exchange visitors.  *See, e.g*., 8 U.S.C. §§ 1731–32, 1735, 1761–62.  As relevant here, nonimmigrant visas may not be issued to a non-citizen from a country that has been designated a state sponsor of terrorism "unless the Secretary of State determines . . . that [the non-citizen] does not pose a threat to the safety or national security of the United States."  *Id*. § 1735(a).  Iran has been designated as a state sponsor of terrorism since 1984.  *See* U.S. Dep't of State, State Sponsors of Terrorism, http://tinyurl.com/mtd2aasf (last visited July 10, 2024).

**B.**

**1.**

Plaintiff Seyedvahid Hosseini was accepted to the University of Massachusetts Chan Medical School as a J-1 Research Scholar.  Am. Compl., ECF No. 13, ¶ 4.  He submitted a DS-160 Form and was interviewed at the United States Consulate General in Istanbul, Turkey ("Istanbul Consulate") on August 8, 2022.  *Id*.  Plaintiff Sepideh Khaleghi was accepted as a J-1 Research Scholar at Baylor College of Medicine and her husband, Plaintiff Emad Sheykhan, is a derivative beneficiary.  *Id*. ¶ 5.  After submitting their DS-160 forms, Khaleghi and Sheykhan appeared for interviews at the Istanbul Consulate on September 23, 2022.  *Id*.

With the fate of their applications uncertain, Plaintiffs say they have "experienced anxiety and stress." *Id.* ¶ 62. The Chan School of Medicine has deferred Hosseini's original start date but has warned that "the school cannot hold his position for another semester." *Id.* ¶¶ 49–51. Khaleghi lost her original offer at Baylor University, forcing her to apply for another position. *See id.* ¶¶ 73, 82.

### 2.

On March 5, 2023, seven Iranian nationals including Plaintiffs filed the instant lawsuit, raising claims of unlawful withholding and unreasonable delay under the APA. *See generally* Compl., ECF No. 1. While the litigation was pending, four of the seven original Plaintiffs received final decisions on their visa applications and were dismissed from the suit. *See* Am. Compl. at 1. The remaining plaintiffs filed an amended complaint on September 27, 2023, which raises only an unreasonable delay claim under the APA. *See generally id.* Plaintiffs seek an order from the court requiring Defendants "to adjudicate the line of similarly situated applicants within a reasonable timeline or to process Plaintiffs' applications in line with other J-1 applicants." *Id.* ¶ 89. On October 11, 2023, Defendants moved to dismiss. Defs.' Mot. to Dismiss & Mem. in Supp., ECF No. 14 [hereinafter Defs.' Mot.], at 1.

### III.

Defendants have moved to dismiss under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim. *Id.*

On a motion to dismiss for lack of standing, a federal court must presume that it "lack[s] jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (citation and internal quotation marks omitted). The burden of establishing the elements of standing "rests upon the party asserting jurisdiction." *Kokkonen v.*

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The court must accept "well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor," and at the motion to dismiss stage, the plaintiff must establish that standing is plausible.  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556–57); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555.  Courts do not, however, "assume the truth of legal conclusions . . . nor . . . accept inferences that are unsupported by the facts set out in the complaint."  *Arpaio*, 797 F.3d at 19 (internal quotation marks and citation omitted).

## IV.

Defendants raise two primary threshold arguments for dismissal—namely that Plaintiffs lack standing and allege claims that are non-justiciable.  Neither argument prevents the court from considering the merits.

To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v.*

4

*Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Defendants argue that Plaintiffs fail to establish both the first and third standing elements.

As to injury in fact, Defendants contend that Plaintiffs have not suffered a cognizable injury because non-citizens have no right to a visa or to travel to the United States. Defs.' Mot. at 8–12. Multiple courts in the District have rejected that very argument, and this court joins them. *See, e.g.*, *Babaei v. U.S. Dep't of State*, No. 23-cv-1244 (TJK), 2024 WL 1178453, at *3 (D.D.C. Mar. 19, 2024) (finding standing for Iranian nationals who alleged an unreasonable delay in processing of their J-1 visa applications) (collecting cases). Vias applicants possess a "procedural right to reasonably expeditious agency action that is tethered to [their] concrete professional and financial interest in earning an advanced degree . . . or completing a postdoc research program[.]" *Khazaei v. Blinken*, No. 23-cv-1419 (JEB), 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023) (internal quotation marks omitted). That is precisely what Plaintiffs have pleaded here. Am. Compl. ¶¶ 4–5, 61–63.

Defendants also assert that because § 1735(a) "precludes any State Department official from issuing" Plaintiffs a visa absent a finding of a non-threat to safety or national security, any alleged injury is not redressable. Defs.' Mot. at 13. But that argument misconstrues the injury. While Defendants cannot direct a particular outcome with respect to Plaintiffs' visa adjudications, nothing precludes them "from directing consular officers to conclude matters presented to them within a reasonable time." *Al-Gharawy v. DHS*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022) (cleaned up).[1] Such a limited court order would redress Plaintiffs' injuries.

---

[1] Defendants point out that the consular official in Turkey "refused" Plaintiffs' visa applications under § 221(g) of the INS. *See* Defs.' Mot. at 4–5. To the extent that Defendants claim this refusal qualifies as a final decision, that assertion is belied by the well-pleaded factual allegations. "Although the State Department may choose to characterize a section 221(g) notification as a 'refusal,' that magic word is not a get-out-of-review-free card." *Al-Gharawy*, 617 F. Supp. 3d at 16 (cleaned up); *see also* U.S. Dep't of State, Visas: CEAC Case Status Change, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-news-archive/visas-ceac-case-

Finally, the court need not consider Defendants' two other threshold arguments for dismissal: (1) the Secretary of State is improperly named as a defendant, and (2) the doctrine of consular non-reviewability bars review. Defs.' Mot. at 23–24. Because neither argument is jurisdictional, *see Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1028 (D.C. Cir. 2021) (holding that consular non-reviewability is a non-jurisdictional issue), the court can rest dismissal on Plaintiffs' failure to state a claim.

### V.

### A.

To state a claim for unreasonable delay under the APA, a plaintiff must plausibly allege that (1) "the agency failed to take a discrete action that it is required to take" and (2) "the delay was unreasonable." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (internal quotation marks and citation omitted). Defendants contend that Plaintiff cannot satisfy either requirement. *See* Defs.' Mot. at 29. The court does not consider the first one, because it dismisses the claim based on the second.

When determining whether a delay in agency action is unreasonable, the court is guided by the familiar six *TRAC* factors:

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher

---

status-change.ht (announcing an update to the visa application portal, under which cases that previously displayed as "Administrative Processing" were updated as "being refused"). At the motion to dismiss stage, the court must "determine whether the complaint sufficiently alleges that the consular officer's 'refusal' was in fact an 'interim' or final decision." *Al-Gharawy*, 617 F. Supp. 3d at 16. Here, the Amended Complaint alleges that Plaintiffs "ha[ve] received notices stating a final decision is pending." Am. Compl. ¶ 48, 53. Moreover, Defendants made a "refusal" argument against four of the original Plaintiffs, all of whom ultimately received final decisions. *See* Defs.' Mot. to Dismiss, ECF No. 12, at 5.

> or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70, 80 (D.C. Cir. 1984) (internal citations omitted). The D.C. Circuit recently balanced these factors in the context of an unreasonable delay claim involving the processing of EB-5 investor visa applications, *see Da Costa*, 80 F.4th at 338–39, and it held that a four-and-a-half-year wait for a visa adjudication was not unreasonable, *see id.* at 342, 346. *Da Costa* compels the same result here. *Da Costa* also refutes Plaintiffs' suggestion that their unreasonable delay claim cannot be decided on a motion to dismiss. *See id.* at 338.

*First and Second TRAC Factors*. "The first two factors are often considered together[.]" *Pourabdollah v. Blinken*, No. 23-cv-1603 (DLF), 2024 WL 474523, at *7 (D.D.C. Feb. 7, 2024) (citation omitted). As Defendants note, Congress has not supplied a timetable for the agency to adjudicate visa applications. *Da Costa*, 80 F.4th at 344 (recognizing that Congress has made an "aspirational statement" that visas should be processed within 180 days). "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). In this District, "courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Id.* (internal quotation marks and citation omitted). Thus, the approximately 22-month delay (for Hosseini) and 23-month delay (for Khaleghi and Sheykhan) between when they appeared for consulate interviews and the date of this opinion is, at best, neutral. *See Da Costa*, 80 F.4th at 344 (finding that the multi-year passage of time in that case "ha[d] not reached the level of disproportionately [the court] previously held sufficient to grant relief").

Plaintiffs acknowledge that "some decisions from this [District] do not weigh in their favor[,]" but argue that those decisions are inapposite because they involve immigrant visas, i.e., a category of visas that permit individuals to live in the United States permanently. Pls.' Opp'n to Defs.' Mot., ECF No. 15 [hereinafter Pls.' Opp'n], at 19. According to Plaintiffs, "the time-sensitivity of J-1 nonimmigrant visa applications" warrants special consideration under the first two TRAC factors. *Id*. at 20. But Plaintiffs "offer[] no legal authority to support applying a stricter rule of reason here." *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 162 (D.D.C. 2022).

Plaintiffs also assert that their Complaint plausibly establishes that "the delay in processing their J-1 visas is not attributable to a processing rule of reason." Pls.' Opp'n at 22. They say that the "different treatment among the group of Plaintiffs" is sufficient to infer that "there is no rhyme or reason to the decision making." *Id*. But the fact that a small group of J-1 visa applications were processed and adjudicated at different timelines "does not, without other information, mean that Defendants are not adhering to the first-in, first-out rule[.]" *Fakhimi v. U.S. Dep't of State*, No. 23-cv-1127 (CKK), 2023 WL 6976073, at *9 (D.D.C. Oct. 23, 2023). Nor can Plaintiffs rely on the Virtual Embassy of Iran's website identifying the processing of student-related visas as a priority. *See Milligan v. Blinken*, No. 20-cv-2631 (JEB), 2021 WL 3931880, at *8 (D.D.C. Sept. 2, 2021) (finding that there is "no compelling reason why the 'public facing announcements' of an agency should be understood to supply the granular substance of a rule of reason").

*Fourth TRAC Factor*.  In *Da Costa*, the court concluded that the fourth *TRAC* factor—the effect of competing agency priorities—"strongly disfavor[ed]" the plaintiffs because moving their "petitions to the front of the line would disrupt competing agency priorities with no overall improvement in the [agency's] backlog." 80 F.4th at 343. Plaintiffs deny that they have "requested to jump to the front of the line," Pls.' Opp'n at 23, but the relief they seek "would still entail a

8

'judicial reordering' of the Department's priorities," *Khazaei*, 2023 WL 6065095, at *7. Moreover, their contention that the agency is sitting on their applications is entirely speculative. This factor thus "weighs against judicial intervention to expedite [the] adjudication" Plaintiffs seek. *Da Costa*, 80 F.4th at 344.

*Third and Fifth TRAC Factors*. The overlapping third and fifth *TRAC* factors consider whether "human health and welfare are at stake" and the "nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. Plaintiffs allege that they are unable to "seek the education of their choice" in Iran given "the current civil strife" there. Pls.' Opp'n at 23. And the delay leaves them "in a state of limbo as they watch their opportunity to serve as a Research Scholar slip away[.]" *Id*. The court sympathizes with Plaintiffs for the difficulties they have faced. But such harms, "along with the uncertainty that results any time an individual must continue to wait to secure a benefit, are insufficient to tip *TRAC* factors three and five" in Plaintiffs' favor. *Da Costa*, 80 F.4th at 345.

*Sixth TRAC Factor*. Finally, "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (internal quotation marks and citation omitted). Here, Plaintiffs do not allege that the agencies involved in the adjudication process have acted improperly. *See* Pl.'s Opp'n at 24.

\*   \*   \*

After weighing the *TRAC* factors, the court concludes that Plaintiffs have failed to state a claim that the delay in processing their visa applications is unreasonable. *See, e.g.*, *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581 (BAH), 2024 WL 341166, at *10 (D.D.C. Jan. 30, 2024) (collecting similar cases).

9

**V.**

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 14, is granted. A final, appealable order accompanies this Memorandum Opinion.

Dated: July 17, 2024

Amit P. Mehta
United States District Court Judge